UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JASPER F. WILSON,<br><br>Plaintiff,<br><br>v.<br><br>JEFFREY A. BEARD, et al.,<br><br>Defendants. | No. 2:15-cv-1481 AC P<br><br><br><br>ORDER |

Plaintiff, a state prisoner proceeding pro se and in forma pauperis, has filed this civil rights action seeking relief pursuant to 42 U.S.C. § 1983. On October 30, 2017, defendants filed a motion to dismiss on the grounds that: (1) plaintiff has failed to exhaust his administrative remedies, and (2) defendants are entitled to qualified immunity. See ECF No. 20. For the reasons stated herein, the court will deny defendants' motion.

I.  PROCEDURAL HISTORY

   A.  Plaintiff's First Amended Complaint

On July 5, 2017, plaintiff filed the operative first amended complaint ("FAC").[1] ECF No.

---

[1] Unlike plaintiff's initial complaint, the FAC is unaccompanied by attachments. See generally ECF No. 12. Instead, throughout the FAC, plaintiff references the exhibits he attached to and filed with his original complaint. See, e.g., id. at 12 (citing to pages 3 and 4 of Exhibit B in original complaint); compare ECF No. 12 at 12 (citing to page 1 of Exhibit B), with ECF No. 1 at 55-58); see ECF No. 12 at 15 (citing to Exhibit C, a "two-page misconduct response dated May 16, 2014"). Despite this violation of Local Rule 220, in the interests of judicial efficiency, the

1

12. In it, plaintiff contends in relevant part that he was subjected to cruel and unusual punishment in violation of the Eighth Amendment when defendants: (1) illegally housed plaintiff in a management cell that had urine and feces, a bug-laden half mattress, and a feces and garbage-filled inoperable toilet, and (2) later deprived him of a clean, sanitary new mattress for nineteen days. Id. at 26-28. Plaintiff also contends that defendants' actions violated several California regulations and that this court has supplemental jurisdiction to address this fact under 28 U.S.C. § 1367. Id. at 4, 7-8. On July 11, 2017, the court determined that plaintiff's Eighth Amendment claims alleging unconstitutional conditions of confinement were potentially cognizable. See ECF No. 13 at 3.

B. Defendants' Motion to Dismiss

Defendants filed the instant motion on October 30, 2017. ECF No. 20. They argue that the case should be dismissed because: (1) plaintiff has failed to exhaust his administrative remedies, and (2) defendants are entitled to qualified immunity. Id. at 12-23.

Defendants contend that plaintiff has not exhausted his administrative remedies because even though his grievance mentioned the unsanitary nature of the mattress in the holding cell, it did not mention the unsanitary conditions of the cell itself. Id. at 20, 22. As a result, the claims specific to the condition of his cell are unexhausted. Id. In addition, defendants contend that none of plaintiff's claims are exhausted because he sought redress only for other mattresses used by other inmates, not redress for the condition of his own mattress. Id. at 20, 21-23. They also argue that to the extent plaintiff added issues to his grievance during the appeals process that were not present in the original grievance, those issues are not exhausted. Id. at 22 n.6 (citing Cal. Code Regs. tit. 15, § 3084.1(b): "Administrative remedies shall not be considered exhausted relative to any new issue, information, or person later named by the appellant that was not included in the originally submitted CDCR Form 602.").

In support of their qualified immunity argument, defendants argue that a reasonable officer would not have known that placing plaintiff in the dirty management cell with an

---

court will direct the Clerk of the Court to copy and attach the exhibits from plaintiff's original complaint to plaintiff's FAC, and it will consider these exhibits in its analysis herein.

2

unsanitary mattress for three hours, or providing plaintiff with a stained and odorous mattress for nineteen days, unequivocally violated the Eighth Amendment. ECF No. 20 at 12-20.

### C. Plaintiff's Opposition

#### 1. Exhaustion

Plaintiff's opposition to the motion dismiss was filed on January 29, 2018. ECF No. 28. Plaintiff denies that he failed to exhaust his administrative remedies. He alleges as follows: On February 27, 2014, plaintiff submitted a "first grievance" to the appeals coordinator in which he asked that prison officials be investigated for violating his Eighth Amendment right to be free from cruel and unusual punishment when they housed him in unsanitary, hazardous conditions. ECF No. 28 at 20-21, 30-31, 70; see, e.g., ECF No. 28 at 79-81 (CDCR 602 and CDCR 22 forms dated 2/27/14 signed by plaintiff). Defendants Parriott and Handy told plaintiff that the grievance "would not make it to the appeals office." The grievance ultimately "vanished" and/or was "destroyed" by an unknown officer, rendering the administrative appeal process "effectively unavailable" to plaintiff. ECF No. 28 at 2-3, 20-21, 69-71, 74; see generally ECF No. 12 at 12-13. The exhaustion process was also rendered unavailable by (1) the return of plaintiff's March 19, 2014 unprocessed second grievance form with no explanation, and (2) the appeals coordinator's alleged April 4, 2014 receipt of a second copy of the March 19, 2014 grievance that plaintiff had re-sent on March 30, 2014 (which was later determined to be untimely). See generally ECF No. 28 at 22-23.

#### 2. Qualified Immunity

Plaintiff contends that the defendants are not entitled to qualified immunity because the California Department of Correction and Rehabilitation ("CDCR") rules are binding, and those working for the CDCR must comply with them. See generally id. at 2. In addition, he contends that because the right to protection from unsanitary environments was clearly established, and all four defendants knew this and were personally responsible for violating plaintiff's rights with deliberate indifference, they are not entitled to qualified immunity. See id. at 17-20.

### D. Defendants' Reply

Regarding the availability of administrative remedies, defendants respond that the

destruction assertion is speculative and self-serving and as such, does not satisfy the narrow exception to the exhaustion requirement. ECF No. 33 at 8-10.

In response to plaintiff's argument regarding qualified immunity, defendants argue that plaintiff has failed to cite to authority which establishes that (1) defendants Parriott and Handy violated a clearly established constitutional right of plaintiff's when they placed him in the unsanitary management cell for three hours, or (2) defendants Johnson and Cuaron violated plaintiff's Eighth Amendment rights by allegedly forcing plaintiff to sleep on an unsanitary mattress for nineteen days. Id. at 3-8.

## II. RELEVANT FACTS

### A. General Facts: Cell Placement and Issuance of Mattresses

On February 26, 2014, plaintiff arrived at California Correctional Institution ("CCI"). See ECF No. 12 at 7. Once there, plaintiff was housed in a management cell which had no bunk, locker, desk, or stool, and in which personal property was forbidden. See id. at 7. Plaintiff asserts that he was intentionally placed there for having threatened correctional staff at Kern Valley State Prison. See id.[2] Plaintiff describes the condition of the management cell as follows:

> The conditions of the cell was [sic] a health and safety hazard, disrespectful, foul, reprehencible [sic], filthy, swarming with nats [sic] and black bugs.
>
> The cell reeked of fecal matter, urin [sic], as the toilet was congested with a weeks' worth of breakfast, lunch, dinner, trash and fecal matter, that rendered the toilet inoperable in violation of: Cal. Cod. Reg. Title 15 § 3332(a)(b)(d); § 3060; § 3064 and § 3004(a)(b).
>
> . . . .
>
> The conditions within [the cell]: The floor was smeared with the prior cell occupant's urin [sic] and fecal matter.
>
> The mattress on the floor had no gray plastic protective covering. The mattress was torn in half, torn up and wet with urin [sic], and dark brownish dried stains of feces, in violation of: Cal. Code of Reg. Title 15 § 3287(a) § 3332(a)(b)(d); § 3060; § 3061; § 3064; and § 3004(a)(b).

---

[2] According to plaintiff, he had been transferred to CCI to serve his nine-month aggravated consecutive security housing unit term for having threatened a non-inmate at Kern Valley State Prison. See ECF No. 28 at 18.

4

ECF No. 12 at 8 (brackets added) (underline omitted).

Plaintiff requested that he be moved and that the condition of the cell be brought to a supervisor's attention. Id. at 8-9. When these requests were refused, plaintiff defecated into his hands and covered the cell door windows with feces in order to block defendant Handy's view into the cell. This forced defendant Handy to call his area supervisor.[3] Id. at 9. Thirty to forty-five minutes later, plaintiff was moved to a regular cell with bunks, lockers, a desk, and a stool. Id. The mattress in that cell, however, was "hazardously unhealthy and not safe to sleep on." Id. Specifically, it had no protective gray plastic covering, smelled like urine, was stained, torn and ripped open. Id. at 10. Thereafter, for at least eighteen days[4] plaintiff verbally asked for a new mattress but was repeatedly denied one. Id.

Plaintiff contends that the day after he was moved from the management cell, he filled out a CDCR 602 grievance form and a CDCR 22 request form complaining about the management cell as well as about the conditions of the mattresses in both of the cells. ECF No. 12 at 12-14; see also ECF No. 28 at 20-21, 78-81. However, the grievance "was impeded and obstructed by some unknown state actor" and was "most likely destroyed to obstruct [his] exhaustion of administrative remedies." ECF No. 28 at 21. After refiling his grievances, on April 4, 2014, ultimately the appeals coordinator cancelled plaintiff's appeals because they had not been timely received by the appeals office. See generally ECF No. 12 at 13-18; see also ECF No. 28 at 20-22.

III.    LEGAL STANDARDS

    A. Exhaustion

        1. Prison Litigation Reform Act

Because plaintiff is a prisoner challenging the conditions of his confinement, his claims are subject to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA requires prisoners to exhaust available administrative remedies before bringing an action challenging prison conditions under § 1983. 42 U.S.C. 1997e(a). "The PLRA mandates that

---

[3] Plaintiff was eventually written up for this. See ECF No. 12 at 11. He was ultimately found guilty of violating housing rules and lost some work credits and privileges. See id. at 11-12.
[4] Plaintiff asserts that he was forced to use the second mattress for either eighteen or nineteen days. See ECF No. 12 at 10, 26-28; see also ECF No. 1 at 43.

5

inmates exhaust all available administrative remedies before filing 'any suit challenging prison conditions,' including, but not limited to, suits under § 1983." Albino v. Baca, 747 F.3d 1162, 1171 (9th Cir. 2014) (quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006)).

For exhaustion to be "proper," a prisoner must comply with the prison's procedural rules, including deadlines, as a precondition to bringing suit in federal court. Woodford, 548 U.S. at 90 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Jones v. Bock, 549 U.S. 199, 219 (2007).

"[F]ailure to exhaust is an affirmative defense under the PLRA." Jones, 549 U.S. at 216. It is the defendant's burden "to prove that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." Albino, 747 F.3d at 1172 (citing Hilao v. Estate of Marcos, 103 F.3d 767, 778 n.5 (9th Cir. 1996)). The burden then "shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies unavailable to him." Id.

Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available. "The obligation to exhaust 'available' remedies persists as long as *some* remedy remains 'available.' Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance." Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) (emphasis and alteration in original) (referencing Booth v. Churner, 532 U.S. 731 (2001)).

2. California Regulations Governing Exhaustion of Administrative Remedies

"The California prison system's requirements 'define the boundaries of proper exhaustion.'" Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Jones, 549 U.S. at 218). In order to exhaust, the prisoner is required to complete the administrative review process in accordance with all applicable procedural rules. Woodford, 548 U.S. at 90. California regulations allow a prisoner to "appeal" any action or inaction by prison staff that has "a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a)
////

(2017).[5] The appeal process is initiated by the inmate's filing a "Form 602" the "Inmate/Parolee Appeal Form," "to describe the specific issue under appeal and the relief requested." Id., § 3084.2(a). "The California prison grievance system has three levels of review: an inmate exhausts administrative remedies by obtaining a decision at each level." Reyes v. Smith, 810 F.3d 654, 657 (9th Cir. 2016) (citing Cal. Code Regs. tit. 15, § 3084.1(b) (2011); Harvey v. Jordan, 605 F.3d 681, 683 (9th Cir. 2010)).

Each prison is required to have an "appeals coordinator" whose job is to "screen all appeals prior to acceptance and assignment for review." Cal. Code Regs. tit. 15, § 3084.5(b). The appeals coordinator may refuse to accept an appeal and does so either by "rejecting" or "cancelling" it. Id., § 3084.6(a) ("Appeals may be rejected pursuant to subsection 3084.6(b), or cancelled pursuant to subsection 3084.6(c), as determined by the appeals coordinator.").

"Cancellation" is reserved for those appeals which the inmate cannot simply correct. For example, an appeal can be cancelled if the action complained of "is not within the jurisdiction" of the CDCR, or if time limits for submitting the appeal have been exceeded. Id., § 3084.6(c)(1), (4). Upon "cancellation" of the appeal, the inmate's only recourse, if he still wishes to pursue it, is to show that the reason given for the cancellation was inaccurate or erroneous, or that "new information" now makes it eligible for review. Id., § 3084.6(a)(3) (cancelled appeal may later be accepted "if a determination is made that cancellation was made in error or new information is received which makes the appeal eligible for further review").

According to the regulations, "a cancellation or rejection decision does not exhaust administrative remedies." Id., § 3084.1(b). Outside of any exceptions outlined in the regulations, "all appeals are subject to a third level of review, as described in Section 3084.7, before administrative remedies are deemed exhausted." Id.

3. Exceptions to, and Alternative Satisfaction of, the Exhaustion Requirement

"Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate . . . must exhaust available remedies, but need not exhaust

---

[5] All citations to Title 15 of the California Code of Regulations are, unless otherwise noted, for the current version, which has been unchanged, in pertinent part, since January 2011.

7

unavailable ones." Ross v. Blake, 136 S. Ct. 1850, 1858 (2016) (brackets in original). In discussing availability in Ross, the Supreme Court identified three circumstances in which administrative remedies were unavailable: (1) where an administrative remedy "operates as a simple dead end" in which officers are "unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) where an administrative scheme is "incapable of use" because "no ordinary prisoner can discern or navigate it," and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 1859-60. "[A]side from [the unavailability] exception, the PLRA's text suggests no limits on an inmate's obligation to exhaust – irrespective of any 'special circumstances.'" Id. at 1856. "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857.

In addition, recently, the Ninth Circuit Court of Appeals held that if a prisoner fails to comply with a prison's procedural requirements in pursuing his appeal but prison officials address the merits of the appeal nevertheless, then the prisoner is deemed to have exhausted his available administrative remedies. See Reyes, 810 F. 3d at 658. "[I]f prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process," then the prisoner has exhausted "such administrative remedies as are available" under the PLRA. Id.

Finally, it has also been held that prisoners whose claims have been remedied during the administrative appeals process at one level are not obligated to exhaust at remaining levels. Harvey, 605 F.3d at 685 ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies."). In addition, they are not obligated to appeal from a decision when the rejection form states that the "action may not be appealed." Harvey, 605 F.3d at 685; see, e.g., Marella, 568 F.3d at 1027 (finding plaintiff not required to exhaust further levels of review after being reliably informed by administrator that no other remedies were available).

////

////

B. Eighth Amendment

1. Deliberate Indifference

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (internal quotation marks and citations omitted). "[A] prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Id. at 834 (internal quotation marks and citations omitted). This first requirement is satisfied by "demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." Lemire v. California Dept. of Corrections and Rehabilitation, 726 F.3d 1062, 1081 (9th Cir. 2013).

Second, the prison official must have a sufficiently culpable state of mind, "one of deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 834 (internal quotation marks and citations omitted). The state of mind is the same in prison-condition cases. Farmer, 511 U.S. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 302-303 (1991)). This second prong is "satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation marks omitted); accord, Lemire, 726 F.3d at 1081; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012).

For a claim based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 35 (1993)). Whether a defendant had requisite knowledge of a substantial risk of harm is a question of fact. Farmer, 511 U.S. at 842. Thus, liability may be avoided by presenting evidence that the defendant lacked knowledge of the risk and/or that his response was reasonable in light of all the circumstances. See id. at 844-45; see also Simmons v. Navajo Cty Ariz., 609 F.3d 1011, 1017-18 (9th Cir. 2010) (requiring official be subjectively aware of serious medical need and fail to adequately respond to need to establish deliberate indifference). Mere negligent failure to protect an inmate from harm is not actionable

under Section 1983. See Farmer, 511 U.S. at 835. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. Lemire, 726 F.3d at 1082 (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

2. Unconstitutional Conditions of Confinement

Extreme deprivations are required to make out a conditions of confinement claim. Hudson v. McMillan, 503 U.S. 1, 8-9 (1992). "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation." Hudson, 503 U.S. at 9 (citing to Wilson, 501 U.S. at 298 and Rhodes v. Chapman, 452 U.S. 337, 347 (1981)) (internal quotation marks omitted).

"If the pain inflicted is not normally meted out as punishment by the statute or sentencing judge, some mental element must be attributed to the inflicting officer before it can qualify as a violation of the Eighth Amendment." Seiter, 501 U.S. at 300. In Whitley v. Albers, 475 U.S. 312 (1986), the Supreme Court identified the mental state needed to support a cruel and unusual punishment claim in situations where on its face, conduct does not appear to be punishment at all. It wrote:

> To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety. . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.

Whitley, 475 U.S. at 319; Wilson, 501 U.S. at 298-99 (quoting Whitley).

Although something as amorphous as "overall conditions" cannot rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists (see Wilson, 501 U.S. at 305), "[s]ome conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, human identifiable need such as food,

////

warmth, or exercise." Wilson, 501 U.S. at 304; Chappell v. Mandeville, 706 F.3d 1052, 1061 (9th Cir. 2013) (citing Wilson).

The Supreme Court has determined that no static test can exist by which courts determine whether conditions of confinement are cruel and unusual. Rhodes, 452 U.S. at 346. This is because the Eighth Amendment "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." Rhodes, 452 U.S. at 346; see Schwenk v. Hartford, 204 F.3d 1187, 1196 (2000) (noting "evolving standards of decency" consideration).

Although the Constitution contemplates that a court's own judgment will be brought to bear on the question of the acceptability of a given punishment, such "judgment[s] should be informed by objective factors to the maximum possible extent." Rhodes, 452 U.S. at 346 (quoting Rummel v. Estelle, 445 U.S. 264, 274 (1980)). "In assessing claims that conditions of confinement are cruel and unusual, courts must bear in mind that their inquiries 'spring from constitutional requirements, and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.'" Rhodes, 452 U.S. at 351 (quoting Bell v. Wolfish, 441 U.S. 520, 539 (1979)).

### C. Qualified Immunity

Government officials performing discretionary functions are entitled to qualified immunity. See generally Anderson v. Creighton, 483 U.S. 635, 638 (1987). The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 231.

To overcome a claim of immunity, plaintiffs must plead "facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. Kidd, 563 U.S. 731, 735 (2011); Jones v. Las

Vegas Metropolitan Police Dep't, 873 F.3d 1123, 1130 (9th Cir. 2017) (quoting Ashcroft). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Jones, 873 F.3d at 1130 (brackets omitted) (internal quotation marks omitted) (quoting Anderson, 483 U.S. at 640).

This does not mean that an official action is protected by qualified immunity unless the action in question has been previously determined to be unlawful. See Anderson, 483 U.S. at 640; see also Jones, 873 F.3d at 1130 (stating Supreme Court does not require case directly on point, but existing precedent must have placed statutory or constitutional question beyond debate). It simply means that a party must point to prior case law that articulates a constitutional rule specific enough to alert specific government actors in the case in question that their particular conduct was unlawful. See Sharp v. County of Orange, 871 F.3d 901, 911 (2017). "To achieve that kind of notice, the prior precedent must be 'controlling' – from the Ninth Circuit or Supreme Court – or otherwise embraced by a 'consensus of courts outside the relevant jurisdiction." Id. An exception to this requirement would be an obvious instance of constitutional misconduct in a case. Id. At the same time, however, "[n]either federal nor state officials lose their immunity by violating the clear command of a statute or regulation – of federal or of state law – unless that statute or regulation provides the basis for the cause of action sued upon." Davis v. Scherer, 468 U.S. 183, 194 n.12 (1984) (brackets added).

IV. ANALYSIS

When considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), and liberally construe the complaint in favor of the plaintiff. Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969). Moreover, pro se pleadings are held to a less stringent standard than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520 (1972). Administrative non-exhaustion provides a basis for dismissal only if it is apparent from the face of the complaint. Albino, 747 F.3d at 1166. Construing the instant complaint in a light most favorable to plaintiff, the court finds that it is not clear on the face of the complaint that the claims

12

are unexhausted. Indeed, reference to the exhibits referenced in the complaint demonstrates that plaintiff exhausted to the extent possible. Moreover, it is also unclear at this early stage of the litigation that defendants are entitled to qualified immunity. For these reasons, the court will deny defendants' motion to dismiss.

A. Exhaustion

1. Failure to Exhaust Claim Related to Management Cell

Defendants argue that because plaintiff's initial grievance did not mention the unsanitary aspects of the management cell, plaintiff's claim that his Eighth Amendment rights were violated when he was placed in the management cell is unexhausted. See ECF No. 20 at 20-23. Specifically, they contend that because plaintiff did not file a complaint that identified the particular problems with the cell, e.g., the inoperable toilet, the unpleasant odors, etc., plaintiff has not exhausted his administrative remedies with respect to the management cell claim. Therefore, it must be dismissed. See id. at 20, 22.

Plaintiff states that he did file an original complaint the day after he had been placed in the management cell. See ECF No. 28 at 20-21; see also ECF No. 1 at 36. However, at that time, defendants Parriott and Handy told him that his complaints "would not make it" to the appeals office. See ECF No. 28 at 21, 81. Indeed, the grievance was not received. See ECF No. 12 at 13; see also ECF No. 28 at 31 (plaintiff reporting 2/27/14 grievance was "missing" or "destroyed"); see also ECF No. 1 at 36 (log noting 2/27/14 appeal never found). Once plaintiff was relocated, he had no reason to continue to appeal conditions in the management cell. These facts do not support dismissal for non-exhaustion on the face of the complaint. See Ross, 136 S. Ct. at 1860 (stating prison administrators thwarting inmates from taking advantage of grievance process renders administrative process unavailable).

2. Failure to Exhaust Claim Related to Second Mattress

Defendants contend that plaintiff's claim regarding the second mattress, in the second cell, is unexhausted because the related grievance that plaintiff filed sought redress with respect to other mattresses used by other inmates, not redress with respect to his own mattress; and that nowhere in his grievances did he contend that he was entitled to redress for the past issuance of

13

unsanitary mattresses. See ECF No. 20 at 20, 22.

Plaintiff alleges that after receiving the second dirty mattress, he asked defendants Johnson and Cuaron who had been responsible for putting the dirty, soiled mattress in his cell, but neither of them would tell him. See ECF No. 12 at 10. Thereafter, plaintiff repeatedly complained to defendants Johnson and Cuaron about it and asked them to replace the mattress. See id. at 9-10. However, plaintiff's requests were denied. See id. at 10. This went on for eighteen days. See id. Eventually, plaintiff filed a CDCR form 22 request on March 15, 2014 which asked for a new, sanitary mattress and which informed officials that he was itching all over because of the dirty mattress.[6] See id. At that time, he was told by defendant Johnson that the dirty mattress was the only one that was available. See ECF No. 12 at 10, 15-16; see also ECF No. 1 at 45. The next day, however, plaintiff received another mattress, and it was acceptable to him. See ECF No. 1 at 45. Thereafter, the grievances plaintiff filed generally addressed mattress conditions throughout the prison. See generally ECF No. 1 at 31-33, 40-43.

When plaintiff received a satisfactory new mattress in the second cell, his concerns as they related to his own mattress were resolved. Therefore, plaintiff was not obliged to raise his own mattress issue in subsequent appeals. See Harvey, 605 F.3d at 685 ("An inmate has no obligation to appeal from a grant of relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies.").

In any event, a review of plaintiff's 602 and 602-A forms submitted March 19, 2014, that are said to have eventually been reviewed by prison officials, shows that plaintiff mentioned both mattresses at the first level of review (see ECF No. 1 at 40, 42), and that plaintiff also attached the March 15, 2014 CDCR 22 request form to that 602 form, which complained about the second mattress and also indicated the physical harm it had caused him, namely, "itching all over" (see ECF No. 1 at 45). Despite this fact, when rejecting plaintiff's grievance, the appeals coordinator appears to have only considered the fact that plaintiff eventually received a new mattress when he

---

[6] Plaintiff filed a written request after he learned that all verbal requests made during the second and third shifts between February 26, 2014 and March 15, 2014 were being denied by all building officers. See ECF No. 12 at 15-16.

14

or she determined that plaintiff had had no "material adverse effect on [his] welfare"[7] from the use of the second mattress. See generally ECF No. 1 at 46. The chronic, pervasive itchiness plaintiff had experienced went unaddressed.

The court need not consider whether this was an appropriate review of plaintiff's claims. In any event, receipt of the new mattress was effectively used by the coordinator to end plaintiff's appeal. See ECF No. 1 at 45 (decision stating plaintiff cannot appeal rejected appeal). As stated earlier, a plaintiff is not required to try to continue an appeal when he has been told that he cannot appeal. Harvey, 605 F.3d at 685. For these reasons as well, the court is not convinced that plaintiff has failed to exhaust. Consequently, defendants' motion to dismiss the complaint for failure to exhaust will be denied.

### B. Qualified Immunity

Defendants cannot prevail on a qualified immunity theory at the pleading stage of this case. The FAC sets forth allegations which, accepted as true and with all inferences drawn in plaintiff's favor, demonstrate defendants' violation of plaintiff's clearly established right to sanitary conditions. See generally Ashcroft, 563 U.S. at 735. In short, whether defendants are entitled to qualified immunity will turn on the resolution of factual questions regarding the conditions of the mattresses and cells at issue and the resulting threat to plaintiff's health and safety that they posed.

#### 1. Plaintiff's Pertinent Rights Were Clearly Established

It is well-settled that prison officials have a duty to ensure that prisoners are provided adequate shelter, food, sanitation, medical care and personal safety. See Farmer, 511 U.S. at 832; Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982), overruled on other grounds by Sandin v. Conner, 515 U.S. 472 (1995). Deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation. Wilson, 501 U.S. at 298. These rights were clearly

---

[7] The CDCR defined "material adverse effect" as "a harm or injury that is measurable or demonstrable, or the reasonable likelihood of such harm or injury. In either case, the harm or injury must be due to any policy, decision, action, condition, or omission by the department or its staff." See ECF No. 1 at 46.

15

established at the time of the events at issue.

### 2. Plaintiff's Eighth Amendment Rights May Have Been Violated

When a combination of conditions of confinement have a mutually enforcing effect of producing the deprivation of a single, human identifiable need, an Eighth Amendment violation may be established. See Wilson, 501 U.S. at 304 (stating conditions of confinement in combination may establish Eighth Amendment violation when effect produces deprivation of single, human identifiable need); see also Chappell, 706 F.3d at 1061.

Plaintiff contends that a number of problems with the management cell made it uninhabitable, and that the second mattress issued to him was unusable. See ECF No. 12 at 7-9. Defendants argue that because plaintiff was only held in the management cell for three hours, no deprivation of constitutional proportions occurred. See ECF No. 20 at 15-18. Defendants also argue that no case law holds that being forced to sleep on a stained, odorous mattress for nineteen days constitutes a constitutionally significant deprivation, and therefore plaintiff cannot establish a violation of his rights or overcome qualified immunity. See id. at 18-20.

The court rejects these arguments. While the time that plaintiff was held in the management cell is a factor to be considered under the Eighth Amendment, it is not necessarily dispositive. See Johnson, 217 F.3d at 731 (circumstances, nature and duration of deprivation of necessities must be considered when determining whether constitutional violation has occurred).[8] "A lack of sanitation that is severe *or* prolonged can constitute an infliction of pain within the meaning of the Eighth Amendment." Anderson v. County of Kern, 45 F.3d 1310, 1314, as amended, 75 F.3d 448 (9th Cir. 1995) (emphasis added). "The more basic the need, the shorter time it can be withheld." Johnson, 217 F.3d at 731 (quoting Hoptowit, 682 F.2d at 1259). Construing the complaint in plaintiff's favor, the conditions of the management cell were so severe that even brief detention was potentially hazardous to health and safety. At this stage of the litigation, the court cannot assume otherwise.

---

[8] Defendants rely on dicta in Hutto v. Finney, which noted that "[a] filthy, overcrowded cell and a diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." Hutto, 437 U.S. 678, 686 (1978). The Ninth Circuit authority on which the undersigned relies is completely consistent with Hutto.

Moreover, plaintiff has alleged that the defendants called the management cell "the shitty box," and placed him there as punishment for allegedly having threatened prison officials at Kern Valley State Prison. See ECF No. 12 at 7. According to plaintiff, defendant Parriott "was going to deal with [plaintiff] in a shitty way" since plaintiff "liked to threaten correctional staff." Id. Defendant Handy allegedly told plaintiff, "So you now get to live in the shitty box." ECF No. 12 at 8. The court must accept the truth of these allegations, which support an inference that defendants knew the cell constitute a health and safety hazard and placed plaintiff there for precisely that reason. Qualified immunity therefore does not support dismissal of plaintiff's claims regarding the management cell.

Regarding the second mattress plaintiff was issued, the court must accept that it was not merely unpleasant but rather was unusable because unsanitary. Plaintiff's allegations that the mattress lacked a protective cover, smelled of urine, and was torn and stained, collectively support an inference of contamination consistent with the allegation that the mattress was "hazardously unhealthy and unsafe to sleep on." See ECF No. 12 at 9-10. This mattress was in plaintiff's cell for nineteen days. Accordingly, the court rejects defendants' argument that no clearly established law put them on notice that it was unconstitutional to give plaintiff a merely "stained and malodorous" mattress. That formulation of the issue assumes defendants' view of the facts, which is improper on a motion to dismiss.

In sum, the questions whether there were constitutional violations and whether defendants are entitled to qualified immunity both turn on the specific facts and circumstances regarding conditions in the two cells. Accordingly, defendants' claim of qualified immunity does not support dismissal of the complaint.

## CONCLUSION

For the reasons explained above, the court concludes that plaintiff's claims have been adequately exhausted and that qualified immunity does not support dismissal of the complaint. This ruling is made without prejudice to the assertion of any defenses on a motion for summary judgment.

////

Accordingly, IT IS HEREBY ORDERED that:

1. The Clerk of the Court copy and attach the exhibits from plaintiff's original complaint (ECF No. 1) to plaintiff's first amended complaint (ECF No. 12), and

2. Defendants' motion to dismiss (ECF No. 20) is DENIED.

DATED: September 20, 2018

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE